IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| LING HAN, ) | |
| ) | |
| Plaintiff, ) | |
| v. ) | |
| ) | Civil Action No. 2:15cv563-WHA |
| ) | |
| VECTRUS SYSTEMS CORPORATION, ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM OPINION AND ORDER**

**I. INTRODUCTION**

This case is before the court on a Motion for Summary Judgment (Doc. #22), filed by Defendant Vectrus Systems Corporation ("Vectrus").

The Plaintiff filed an "EEOC Complaint" pro se to initiate this case on August 4, 2015. This bare-bones document which serves as her judicial Complaint identifies the following as her claims: termination of employment based on her national origin, retaliation, and age. The Defendant filed an Answer to the Complaint. An attorney then entered an appearance on the Plaintiff's behalf, but no amendment was made to the Complaint. The Defendant filed an Amended Answer.

For the reasons to be discussed, the Motion for Summary Judgment is due to be GRANTED.

**II.  SUMMARY JUDGMENT STANDARD**

Summary judgment is proper "if there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The party asking for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion," relying on submissions "which it believes demonstrate the absence of a genuine issue of material fact." *Id.* at 323.  Once the moving party has met its burden, the nonmoving party must "go beyond the pleadings" and show that there is a genuine issue for trial. *Id.* at 324.

Both the party "asserting that a fact cannot be," and a party asserting that a fact is genuinely disputed, must support their assertions by "citing to particular parts of materials in the record," or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56 (c)(1)(A),(B).  Acceptable materials under Rule 56(c)(1)(A) include "depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials."

To avoid summary judgment, the nonmoving party "must do more than show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  On the other hand, the evidence of the nonmovant must be believed and all justifiable inferences must be drawn in its favor. *See Anderson v. Liberty Lobby*, 477 U.S. 242, 255 (1986).

After the nonmoving party has responded to the motion for summary judgment, the court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).

### III. FACTS

The submissions of the parties establish the following facts, construed in a light most favorable to the non-movant:

Plaintiff Ling Han ("Han") was born in 1966. She is of Chinese descent. She began working in 2009 as a Library Technician at two library facilities on the Maxwell-Gunter Air Force Base in Montgomery, Alabama. Defendant Vectrus is a company that holds contracts with the United States of America ("the Government") related to defense services. Han was an employee of Vectrus.

Han filed a charge of discrimination against Vectrus in December of 2012. In it, she complained about a hostile work environment and threats of discharge. She was placed on medical leave and came back to work in July of 2013. She received a Right to Sue letter, but did not file suit within 90 days.

Han's employment with Vectrus ended in November 2014. Vectrus's position is that Han's position was terminated as a result of a Government-mandated reduction-in-force that resulted in the elimination of all eight Library Technician positions, a Systems Librarian position, and a Library Director position.

After the libraries were closed, new positions were created at the Resource Center. The Library Technicians were informed of and given the opportunity to apply for these new positions. Han applied and was interviewed for the new position of Resource Center Aide, but was not hired. All of the applicants were former Library Technicians. Han and the other applicants were interviewed by Thomas Hanna ("Hanna"), Personnel Services Supervisor; Brad Lundquist ("Lundquist"), Education and Training Services Supervisor; and Robyn Streety ("Streety"), Human Resources Administrator for Vectrus.

Of the three candidates selected for the Resource Center Aide position, one is younger than Han and none of the new hires are of Chinese descent. The interviewers asked limited questions about flexibility, and filled out forms rating the interviewees in various categories. All of the

persons interviewed had previously been employed as Library Technicians. Han concedes that the interviewers were familiar with the applicants and their experience, education, and skill levels, but contends that the skills were not what was used to make the decision. (Doc. #29 at p.11-12).

Han filed a second EEOC Charge on November 17, 2014. In this EEOC Charge, Han states that she received a written warning in August 2013 for insubordination, that she was discharged as part of a reduction-in-force, and that she was not hired as a Resource Center Aide. She checked the boxes on the EEOC form for retaliation, age, and national origin discrimination. (Doc. #1-1). On June 3, 2015, the EEOC issued a Dismissal and Notice of Rights and Han filed her Complaint in this court.

As noted above, the Complaint filed in his court identifies discrimination in national origin, retaliation, and age in the termination of Han's employment. (Doc. #1). In the narrative portion of her Complaint, she states that she filed an EEOC Charge in 2012, took medical leave, returned to work on July 1, 2013, and was issued a "Red Warning" for insubordination on August 28, 2013. She states that she was discharged as part of a reduction-in-force, she applied for the position of Resource Center Aide but was not hired even though she had more seniority than a younger African-American person who was hired.

## IV. DISCUSSION

Vectrus has moved for summary judgment on the following grounds as to various claims: any purported hostile work environment claim is barred, not within the Complaint, and fails on the merits; a claim based on issuance of a written warning is barred and fails on the merits; there is no evidence that Han's termination was retaliatory or discriminatory; and Vectrus did not discriminate or retaliate against Han when it failed to hire her for a new position. The court will

4

address each ground for summary judgment in turn.

### A. Hostile Work Environment Claim

Vectrus contends that summary judgment is due to be granted as to any purported hostile work environment because that claim was not included in her EEOC charge or her judicial Complaint. Vectrus acknowledges that Han filed an EEOC charge in December of 2012 which included hostile work environment allegations, but states that any claim based on that charge is barred because Han did not file suit within 90 days of receiving her Right to Sue letter.

Han did not file suit within 90 days of her EEOC Charge. 42 U.S.C. § 2000e–5(f)(1); *Green v. Union Foundry Co.*, 281 F.3d 1229, 1233-34 (11th Cir. 2002). And, there is no hostile work environment claim theory in her most recent EEOC charge. (Doc. #1-1). Before a plaintiff may sue for discrimination, she must first exhaust her administrative remedies. *See Crawford v. Babbitt*, 186 F.3d 1322, 1326 (11th Cir.1999).

Han argues that her hostile environment claim grew out of the facts alleged in her first EEOC charge. A claim in a judicial complaint is not administratively-barred if a EEOC investigation of the complaints in the charge would have reasonably uncovered evidence of the claim. *See Gregory v. Georgia Dep't of Human Res.*, 355 F.3d 1277, 1280 (11th Cir. 2004). In this case, however, there is no claim asserted for hostile work environment in the judicial Complaint Han filed in this court. There is no allegation in the Complaint about harassment or conduct creating a hostile work environment. (Doc. #1).

Han argues that her employer was on notice that she was claiming a hostile work environment because of her submissions in 2012 in her first EEOC charge. Han does reference the 2012 Charge in her 2014 Charge and Complaint, but one of the reasons Han gave for not filing suit after the first Charge was that Vectrus took "corrective actions." (Doc. #29 at p.2; #29-4).

Even in the facts section of her brief in opposition to summary judgment, Han only refers to unfair or bullying treatment by library staff which occurred in 2012. (Doc. #29 at p.6-9).   In the Complaint filed with this court, there are no allegations of comments or other harassment on the basis of national origin or age which continued after Han returned to work in July of 2013.   While the Complaint was filed pro se, Han is currently represented by counsel and did not seek to amend he Complaint to add a claim of hostile work environment or to plead any facts to support a hostile work environment claim.   "A plaintiff may not amend her complaint through argument in a brief opposing summary judgment." *Gilmour v. Gates, McDonald & Co.*, 382 F.3d 1312, 1315 (11th Cir. 2004).

This court must conclude that a hostile work environment claim based on conduct charged in the initial EEOC Charge is barred because Han did not bring suit within 90 days, and that a hostile work environment claim based on conduct continuing until the time of her discharge is similarly barred because it was not within the second EEOC Charge and is not the subject of her Complaint filed in this court. *Cf. Francois v. Miami-Dade Cty.*, 742 F. Supp. 2d 1350, 1354 (S.D. Fla. 2010), *aff'd sub nom. Francois v. Miami Dade Cty., Port of Miami*, 432 F. App'x 819 (11th Cir. 2011) (finding that the plaintiff's claims were barred because he failed to include his national origin claim in his verified EEOC charge and he failed to draft his complaint based on the claims which were raised in his EEOC charge).

Alternatively, even if a hostile environment claim were fairly within the second EEOC charge and the Complaint filed with this court, and the court can consider conduct dating back to before the first EEOC charge, summary judgment is due to be granted on the merits.   To establish a hostile work environment claim, an employee must show: (1) that she belongs to a protected group; (2) that she has been subject to unwelcome harassment; (3) that the harassment must have

6

been based on a protected characteristic of the employee, such as national origin; (4) that the harassment was sufficiently severe or pervasive to alter the terms and conditions of employment and create a discriminatorily abusive working environment; and (5) that the employer is responsible for such environment. *Miller v. Kenworth of Dothan, Inc.*, 277 F.3d 1269 (11th Cir. 2002).

     Han has pointed to very little evidence of harassment linked to a protected characteristic. She has pointed to evidence of 2012 complaints that she was a hard worker and other employees were not, so she had to complete tasks she felt were other employees' responsibility, and that she felt as though she were being bullied and harassed. (Doc. #29-12, #29-14). She has pointed to no evidence of comments or conduct based on her age. Some comments identified as being related to her national origin are comments that her manager said she had problems understanding her, and that "certain co-workers" said they could not understand her and that she did not do things the "American way." (Doc. #29-2). The evidence of these comments of unspecified frequency, however, even when considered along with the evidence of alleged bullying which is not specifically identified as linked to her national origin, is not sufficient to establish a question of fact as to a severe or pervasive environment in this case. *Miller*, 277 F.3d at 1276-77 (stating "Title VII is only implicated in the case of a workplace that is permeated with discriminatory intimidation, ridicule and insult.") (citation omitted).

     It also may be that Han is claiming that she suffered retaliatory harassment dating back to 2010 and ending with her not being re-hired. There is a causation issue presented by this retaliatory harassment theory in this case. Assuming that Han is attempting to include conduct from 2010 until her termination, some identified conduct "occurred before she filed her first EEO complaint (and in fact was the subject of that complaint) and thus cannot be evidence of

post-complaint retaliation." *Andrews-Willmann v. Paulson*, 287 F. App'x 741, 747 (11th Cir. 2008). Han does not contend, and if she does contend it, the court does not find based on the evidence she has cited, that evidence of conduct after her first EEOC Charge in December 2012, by itself, is sufficiently severe or pervasive to constitute a retaliatory hostile work environment. Therefore, to the extent that Han intended to assert a separate retaliatory harassment claim, summary judgment is also due to be GRANTED as to that claim.

B. Claims Based on Issuance of a Written Warning

It is undisputed that Han was issued a written warning on August 29, 2013, a warning referred to by Han as a "Red Warning" for insubordination. Han disputes that she was insubordinate. In her argument in opposition to summary judgment, however, she only discusses the written warning in the context of other claims. (Doc. #29 at p.24).

Vecturs argues that because Han did not file her EEOC charge until November 17, 2014, any claim based on the warning fails because it was not included in an EEOC Charge filed within 180 days of the challenged employment action. Vectrus also argues that there is no evidence to support a finding that the written warning was an adverse employment action.

To bring a claim of discrimination based on the written warning, Han must have filed an EEOC charge within 180 days of the discrimination. *See* 42 U.S.C. § 2000e-5(b); 42 U.S.C. § 2000e-5(e)(1); *Wilkerson v. Grinnell Corp.*, 270 F.3d 1314, 1317 (11th Cir. 2001). To the extent, therefore, that Han intended to bring a separate claim based on issuance of the warning, summary judgment is due to be GRANTED as to a separate discrimination and retaliation claims based on the written warning.

C. Termination Claims

8

Vectrus moves for summary judgment on Han's national origin, age, and retaliation claims stemming from her termination, arguing that Han cannot make out a prima facie case because Vectrus did not make the challenged employment decision. Vectrus states that the Government made the decision to close the library facilities and eliminate the Library Technician positions. Vectrus also states that the entire library staff was terminated, so there is no evidence of intent to discriminate, and that there is no evidence of pretext.

Han does not include a discussion of this claim in her brief. While it is clear that she disputes that the decision to eliminate the libraries was made by the Government, it is less clear that she intended this to be the basis of a separate claim for relief, and it may be that she only intended this argument to support her failure to re-hire claim. For example, she states that there is no evidence that the reduction-in-force was required by the Government and that this factual dispute is evidence of pretext for the decision not to "re-hire Han." (Doc. #29 at p.5). The court, therefore, will address her arguments regarding the reduction-in-force in the context of her failure to re-hire claims.

In an abundance of caution, however, to the extent that Han intended to bring separate discrimination claims based on termination, as indicated in the Complaint, the court has also examined Han's evidence as to whether the decision to eliminate her position was made by Vectrus. Han's argument that the elimination of the Library Technician position was not mandated by the Government is based on the deposition of Hanna in which he stated that the elimination of the position was not referred to as a "de-scope." Hanna, however, also said that the closing was classified as a closing "of libraries in accordance with the new PWS." (Doc. #29-21 at

9

p.4:2-6).[1]  Hanna further stated in a Declaration that in August 2014, the Government told Vectrus that it was closing the Gunter library and changing the Maxwell library into a digital Resource Center (Doc #24-18 at p.2).   Hanna stated that in response to the Government's decision, Vectrus eliminated eight Library Technician positions, a Systems Librarian position, and a Library Director position.   (Doc. #24-18 at p.2).

In her deposition, Han acknowledged that Vectrus was told that the library was being closed and that Vectrus terminated the employment of the library technicians. (Doc. #24-2 at p.150:8-18).

The court concludes that there is insufficient evidence to call into question evidence that a decision to close the library was made by the Government, communicated to Vectrus, and as a result of that, the Library Technicians were terminated.   Therefore, summary judgment is due to be GRANTED as to any separately-stated termination claims in this case.

### D.  Failure to Hire Based on Age and National Origin

Han addresses together her claims that the failure of Vectrus to hire her into the new Resource Center Aide position was because of her age and national origin.[2]

Where, as here, the plaintiff seeks to prove intentional discrimination by using circumstantial evidence of intent, the court applies the framework first set out by the United States Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).[3]  Under this

---

[1] The court has referred to depositions by the document number, and the page number assigned by the filing, rather than the internal deposition page number.

[2] Han also refers to race in her brief. There is no reference to race in the Complaint, and in fact, there is an "x" next to "national origin," and the space next to "race" is left blank. (Doc. #1). The race and national origin claims appear, in any event, to be the same.

[3] At one point in her brief, Han refers to "direct evidence," but the court cannot conclude that she

framework, the plaintiff must establish a prima facie case of discrimination. *McDonnell Douglas*, 411 U.S. at 802. In this case, Han states that she is Asian-American, from China, and over the age of 40, and that at least one of the persons selected was under the age of 40, and no one re-hired was of Chinese descent.

After the plaintiff has established a prima facie case of discrimination, the burden of production is placed upon the employer to articulate a legitimate nondiscriminatory reason for its employment action. *Texas Dept of Cmty. Affairs v. Burdine*, 450 U.S. 248, 254 (1981). The plaintiff may seek to demonstrate that the proffered reason was not the true reason for the employment decision "either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." *Id.* at 256; *Combs v. Plantation Patterns*, 106 F.3d 1519, 1528 (11th Cir. 1997). A plaintiff's prima facie case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated. *Reeves v. Sanderson Plumbing Prod., Inc*., 530 U.S. 133, 147 (2000). That is, even if a plaintiff establishes a prima facie case and offers sufficient evidence of pretext as to each of the proffered reasons, summary judgment will sometimes be available to an employer in such a case. *Chapman v. AI Transport*, 229 F.3d 1012, 125 n.11 (11th Cir. 2000).

Vectrus does not dispute the prima facie case, but instead focuses on its articulated reasons

---

presented evidence to establish a direct evidence case. For example, Han offers evidence that she was more qualified than the others who were selected and states that this is "direct evidence." This type of evidence is not considered to be "direct" evidence of discrimination. *See, e.g., Wilson v. B/E Aerospace, Inc*., 376 F.3d 1079, 1086 (11th Cir. 2004) (stating "only the most blatant remarks, whose intent could mean nothing other than to discriminate on the basis of some impermissible factor constitute direct evidence of discrimination.") Therefore, the court has analyzed her claims as circumstantial evidence claims.

for the hiring decision, and argues that Han cannot establish that those reasons are a pretext for discrimination. Vectrus states that it did not hire Han for the Resource Center Aide position because, although she was offered an interview because she was qualified for the position, she was not selected because she was not one of the three most qualified candidates for the position.   One of the interviewers for the position, Lundquist, explained the qualifications in his deposition by stating that these positions did not require a high degree of technical skill but were mainly customer service, with the majority of the job being spent greeting and assisting patrons. (Doc. #24-22 at p.21:4-12).

      Vectrus offers the Interview Evaluation forms of the interviewed persons in support of its reliance on qualifications, which reveal that those selected were all rated higher than was Han after the interview. (Doc. #24-20, #). The applicants were rated on general ability; technical qualifications including education, training, experience; personal qualities including sociability, appearance, manner, professionalism; communication skills; problem solving skills including analytical approach; and overall evaluation for the position.   Three persons were recommended for hiring by the interviewers: Suzette Farris, Shundalyn Hall, and Yvonne Williams.   Suzette Farris was rated "top" in all interview categories by Hanna (Doc. #24-20 at p.3) and "above average" in all categories by Streety and Lundquist (Doc. #24-31, #24-26). Shundalyn Hall was rated "top" by all interviewers in all categories (Doc. #24-20 at p.5; #24-34; #24-23). Yvonne Williams was rated "above average" in all categories by Hanna (Doc. #24-20 at p.4); "above average" in general ability, personal qualities, and overall evaluation, "top" in technical qualifications, and "average" in communication skills and problem solving skills by Lundquist (Doc. #24-25); and "average" in communications skills and "above average" in all other categories by Streety (Doc. #24-32).   Han received "average" ratings from Hanna in all categories except

12

communication skills where she received a "below average." (Doc. #24-20 at p.6).   Han received "below average" ratings in all areas except for general ability and technical qualifications, where she was rated "average" by Lundquist (Doc. #24-24).   She was rated "below average" in personal qualities and communications skills and "average" in all other categories by Streety (Doc. #24-36).   Streety stated in her Declaration that the applicants selected, Hall, Farris, and Williams, did not try to avoid customer interaction. (Doc. #24-29 at p.4).

It appears to the court that Han contends she can establish pretext based on the following: (1) she was the most qualified because the Library Technician Position had twenty-seven major job activities and eight associated skills, but the Resource Center Aide had seven job activities which were simpler and more generic and three associated skills; (2) Han has decade of experience; (3) Han has a degree in Library Science; (4) during her interview in 2009 she was rated top in technical qualifications, personal qualities, above average in general ability, and average in communications; (5) the interviews for the Resource Center Aide position were a sham because the interviewers did not ask about specified topics and only asked about flexibility; (6) Han was the only library employee recognized by management for outstanding customer service; (7) in her notice of non-selection, Vectrus admitted that Han's qualifications were impressive; (8) Vectrus chose to exclude the Resource Aid positions from the Collective Bargaining Agreement ("CBA") and Han was told at a meeting at which the union president was present that because of the CBA she would have to be retained and re-hired; and (9) the elimination of the Library Technician position is pretext because there was no reduction-in-force, or "de-scope."

The court will begin with Han's arguments regarding the creation and filling of the position by Vectrus, and then address her relative qualification arguments.

Han's argument that the elimination of the Library Technician position was pretext is that

13

although the letter to Han said her position was being mandated by a government "de-scope," there was no "de-scope;" therefore, the elimination of the position was never ordered by the Government.   As discussed above, although Han cites the deposition of Hanna for the proposition that the elimination of the position was not referred to as a "de-scope,"   Hanna stated that the closing was classified as a closing "of libraries in accordance with the new PWS." (Doc. #29-21 at p.4:2-6).   Hanna also stated in a Declaration that in August 2014, the Government told Vectrus that it was closing the Gunter library and changing the Maxwell library into a digital Resource Center (Doc #24-18 at p.2).

As noted earlier, the court concludes that there is insufficient evidence to call into question evidence that a decision to close the library was made by the Government and communicated to Vectrus and as a result of that, the Library Technicians were terminated. The use of the term "de-scope" in the letter sent to Han, therefore, does not establish pretext in this case.

The court now turns to Han's arguments regarding the creation of the positions of Resource Center Aides.   Han argues that the positions should have been covered by the CBA and if they had been, she would have been hired.   Han argues that after she was not selected, the positions were covered by the CBA, and cites to Streety's deposition for the proposition that "no one seems to know who made the decision to exclude" the position from the CBA.   (Doc. #29 at p.33).

Vectrus points to Streety's testimony to show that the Resource Center Aide positions were new, and therefore, were not positions bargained for by the Union at the time the CBA was negotiated, and when the new CBA was negotiated in 2015, the Resource Center Aide position was included.   (Doc. #29-23 at 109:11-112:10; #24-29 at ¶8).   The portion of Streety's deposition cited by Han that she did not know how the determination was made that the new positions would not be covered by the CBA does not undermine the evidence that the positions

14

were not within the existing CBA, but became covered by the CBA when it was renegotiated.

Vectrus also argues that even if the CBA had applied to the Resource Center Aide positions at the time Han applied, Han would not have been hired based on seniority. The evidence Han cites to demonstrate that she would have been hired into one of these positions under the CBA is her own deposition testimony. Han states in her deposition that Lameka Johnson, a representative of the union, told her that Vectrus would keep Han because retention depended on two policies, full-time and seniority, and Han was full-time and second in seniority. (Doc. #29-20 at p.155:10-20). Han also cites to her EEOC Charge Detail Inquiry as support for the statement that she was the "most tenured full time employee." (Doc. #29 at p.3 citing Doc. #29-9).

Vectrus states that Han's statement about what she was told at a staff meeting is not sufficient to overcome record evidence. Vectrus points out that there is nothing in the CBA about seniority. Vectrus cites to the CBA which states that in cases of decreases of force, the ability to perform the work and seniority will be considered and where the factors are relatively equal, seniority shall be the determining factor. (Doc. #24-8 at p.8). Vectrus cites to Streety's Declaration in which she states that "Yvonne Williams, Rebecca Smith, Suzette Farris, and Deborah White, in that order, had the most seniority under the CBA of all of the Library Technicians." (Doc. #24-29 at ¶21).

Han's testimony that a union representative told her she would be hired because she was second in seniority and full-time is not sufficient to create a question of fact to establish pretext. There is no evidence to dispute that the newly-created positions were not covered by the CBA. Even if the CBA applied, however, the court has been pointed to no provision which gauges seniority based on full-time status. (Doc. #24-8 at p.8). Han has not presented testimony that she was more senior to those who were hired, within the meaning of the CBA. Therefore, her CBA

argument does not establish pretext.

The court now turns to Han's contention that the interview process for the new position was a sham. Han's position is that the interviews were brief, and she was only asked whether she had a flexible schedule, so reliance on ratings as to categories of qualifications is a sham.

Vectrus does not disagree with Han's characterization of the interview process as being limited, but contends that the questions were not the only basis for the interviewers' evaluations.

Personnel Services Section Supervisor Hanna testified in his deposition that he, Lundquist, and Streety interviewed all of the candidates for the Resource Center Aides. (Doc. 24-19 at p. 2:6-10). Streety's deposition testimony is that the interviews were different from traditional interviews because Vectrus knew that all of the Library Technicians were qualified to do the work as a Resource Center Aide, so it was unlike an interview when they have no knowledge of how someone will work. (Doc. #24-30 at p.18:17-120:3). The new positions were part-time, and flexibility was key, so during the interviews, the interviewees were asked about flexibility. (Doc. #24-22 at p.9: 22-23).

Lundquist also explained in his deposition that they had prior knowledge of all of the applicants coming in to interview because they were all employees. (Doc. #24-22 at p.5:19-23). *See Springer v. Convergys Customer Mgmt. Group, Inc*., 509 F.3d 1344, 1350 (11th Cir. 2007) (finding no evidence of pretext where decision maker relied on firsthand knowledge of potential applicants). Vectrus provides a 2012 email from Marsha Taylor to Hanna, on which Lundquist was copied, regarding Han which states that Han had expressed a strong interest in wanting to do cataloging and projects where she was working alone. (Doc. #24-37).

Vectrus futher points to testimony of the interviewer's evaluation of the applicants' behavior during the interviews. Hanna stated in his deposition that during her interview, Han

16

acted aloof, did not have good eye contact, and answered tersely and did not expound when Lundquist asked her a question about flexibility.  (Doc. #24-19 at p.11:1-12:7).   Hanna states in his deposition that other interviewees were not asked any questions other than about their availability, but he recalled that they "did respond and expound."   (Doc. #24-19 at p.12:13-21). In his deposition, Lundquist stated that he expected people to sell themselves in an interview, but Han did not smile or interact, and snapped at him when he asked about flexibility.   (Doc. #24-22 at p.13:8-18).   By contrast, Lundquist noted on his form that Hall was very personable, and said in his deposition that he based that on her demeanor in the interview, and that she sold herself for the position.   (Doc. #24-22 at p..10:3-20). Streety also stated that Han acted as though she did not really want to be there when she interviewed, and that she rolled her eyes when she answered that she did not have a job when Lundquist asked her about flexibility. (Doc. #24-30 at p.13:1:-6). The court cannot conclude, therefore, that evidence regarding the nature of the interviews themselves sufficiently undermines the articulated reasons.

      Han's relative qualifications argument is not that the persons hired were unqualified, but that she was more qualified.   The standard which applies when an employee challenges relative qualifications is quite high.   A plaintiff must establish that the disparities between a successful applicant's and her own qualifications are of such weight and significance that no reasonable person, in the exercise of impartial judgment, could have chosen the candidate selected over the plaintiff.   *Springer*, 509 F.3d at 1349.

      Han has pointed to several of her qualifications, such as that she has a degree in Library Science.   Han has provided no comparative evidence on this point, however, and, even assuming that she was the only applicant with a degree, her employer's reliance on other criteria instead does not establish pretext. *Id.* at 1349 (finding no evidence of pretext because "[w]hile Plaintiff was the

only Operations Manager that possessed a four-year degree, Susan Johnson possessed the requisite experience to substitute for a lack of a college degree.")  Han also states that during her interview in 2009, she was rated top in technical qualifications, personal qualities, above average in general ability, and average in communications, but the signature of the interviewer on the form indicates that this person was not an interviewer in 2014. (Doc. #29-19).  "[D]ifferences in treatment by different supervisors or decisionmakers can seldom be the basis for a viable claim of discrimination."  *Foster v. Biolife Plasma Servs., LP*, 566 F. App'x 808, 811 (11th Cir. 2014). Han argues that she was more qualified for the Resource Center Aide job activities which were simpler and more generic, but that would be true for all applicants.  Han argued that she had a decade of experience, but provides no evidence as to the amount of experience the other applicants had.  Han does state that she was the only library employee recognized by management for outstanding customer service, however, to support this statement, she only has provided the court a copy of a certificate she was given for a free lunch with her boss awarded in 2012 for outstanding customer service. (Doc. #29-10).  This evidence does not establish that she was the only employee to receive this recognition.

There is no dispute that Han was qualified for the position. Vectrus, however, was entitled to rely on subjective criteria, and to place value on customer service skills, in determining that other applicants were more qualified.  "A plaintiff employee may not establish that an employer's proffered reason is pretextual merely by questioning the wisdom of the employer's reason as long as the reason is one that might motivate a reasonable employer." *Springer*, 509 F.3d at 1349.  Han has failed to create a question of fact as to whether a reasonable person in the exercise of impartial judgment could have chosen the candidates selected over her.  *Id*.  Summary judgment is due to be GRANTED as to the failure to re-hire claims.

E. Retaliation Through Failure to Re-Hire

Vectrus argues that Han cannot establish a prima facie case of retaliation because, assuming she is relying on her December 2012 EEOC charge as protected activity, Han cannot establish a causal connection between the filing of her EEOC charge in December 2012 and the hiring decision in November 2014, nearly two years later.

Han's temporal proximity theory is that her complaint "started in February of 2013 and did not officially end until the expiration of her right to sue in May of 2014 and Han's termination in November of 2014 only seven (7) months later was clearly pretext." (Doc #29 at p.3).   Han cites no legal authority for her argument that temporal proximity is measured from the time that her right to sue expired.

Han concedes that her December 2012 EEOC charge was known to persons at Vectrus, particularly to Streety, in December of 2012 or January of 2013.   (Doc. #29 at p. 17 citing Doc. #29-23).   Therefore, temporal proximity must be established as between that date and the adverse employment action. *Gaddis v. Russell Corp.*, 242 F. Supp. 2d 1123, 1146 (M.D. Ala.), *aff'd*, 88 F. App'x 385 (11th Cir. 2003) (stating "[a] plaintiff satisfies this requirement if she provides sufficient evidence that the decision-maker became aware of the protected conduct, and that there was close temporal proximity between this awareness and the adverse employment action.")

Even if Han's May 2014 date for temporal proximity were accepted, however, the period of time which elapsed from that date until November of 2014 is not sufficiently close to satisfy causation. *See Thomas v. Cooper Lighting, Inc.,* 506 F.3d 1361, 1363 (11th Cir. 2007)(finding a "three (3) month period, without more, does not rise to the level of 'very close' "); *Williams v. Waste Mgmt., Inc*., 411 F. App'x 226, 229-30 (11th Cir. 2011) (finding a two-month gap is not close enough).   Therefore, summary judgment is due to be GRANTED as to Han's claim that the

19

failure to re-hire her in November of 2014 was in retaliation for her December 2012 charge of discrimination.

## V. CONCLUSION

For the reasons discussed, Han has failed to create a question of fact to preclude summary judgment in this case. Accordingly, the Motion for Summary Judgment is ORDERED GRANTED. Final judgment will be separately entered.

Done this 13th day of July, 2016.

/s/ W. Harold Albritton_____
W.   HAROLD ALBRITTON
SENIOR UNITED STATES DISTRICT JUDGE